UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-564-H

KFC CORPORATION                                                                             PLAINTIFF

V.

ZUBAIR M. KAZI                                                                 DEFENDANT

\*\*\*\*

CIVIL ACTION NO. 3:13-CV-291-H

KFC NATIONAL COUNCIL & ADVERTISING
COOPERATIVE, INC.                                               PLAINTIFF

V.

ZUBAIR M. KAZI                                                             DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on KFC National Council & Advertising Cooperative, Inc.'s ("NCAC") summary judgment motion regarding Zubair Kazi's liability for personal guaranties ("the Guaranties") he signed as well as damages possibly owed for those guaranties. This was originally a stand-alone case, but the Court consolidated it with a Kentucky Fried Chicken Corporation ("KFCC") suit against Kazi to enforce similar guaranties. The Court has already determined Kazi's liability under the KFCC guaranties, and it has denied Kazi's requests for more discovery and to assert his affirmative defenses against KFCC. Likewise, for the reasons explained below, the Court now finds that Kazi is liable under the Guaranties he signed with NCAC. At a later time, the Court will decide the damages issue for both NCAC and KFCC.

I.

As this Court has already described the facts of this case, the Court now lists only those facts essential for understanding this opinion. Zubair Kazi is the founder, Chairman, and CEO of Kazi Foods, Inc. Before bankruptcy proceedings in the Eastern District of Michigan, he owned four Kazi franchisee entities[1] that operated 142 KFC restaurants in several states. The franchise agreements with KFCC required these franchisee entities to pay monthly advertising contributions to NCAC.

But in 2010 the Kazi entities fell behind on their monthly advertising contributions to NCAC. Three of the entities—Kazi Florida, Kazi New York, and Kazi Annapolis—entreated with NCAC to sign promissory notes ("the Notes") rather than make immediate payments. The Notes were executed in December 2010. They established a payment schedule for the delinquent advertising payments and obligated the Kazi entities to begin making payments in January 2011. The Kazi Florida Note was for the principal amount of $511,228.70, Kazi New York's Note was for the principal amount of $1,893,857.36, and Kazi Annapolis' Note was for $480,117.49. These Notes were of great import to Kazi—signing them meant that the Kazi entities were no longer in breach of their NCAC obligations and, thus, would not be in breach of their franchise agreements with KFCC.

NCAC demanded more, however, than just the Notes. As consideration and additional security for its willingness to forbear its enforcement of the Kazi entities' past due payment obligations, NCAC required Kazi personally to sign the Guaranties on each Note. Kazi Florida made the first two payments, but then failed to make all subsequent payments. Kazi Annapolis and Kazi New York made the first three payments, but then missed all subsequent payments.

---

[1] These entities—Kazi Foods of Florida, Inc. ("Kazi Florida"), Kazi Foods of New York, Inc. ("Kazi New York"), Kazi Foods of Annapolis, Inc. ("Kazi Annapolis"), and Kazi Foods of Michigan, Inc. ("Kazi Michigan")—are not parties to this litigation.

Despite the Guaranties that Kazi signed he has not made any payments to NCAC. NCAC now asks the Court for summary judgment on Kazi's liabilities under the Guaranties. It requests an order upholding Kazi's liabilities on his Guaranties with NCAC, denying his requests for discovery relating to certain affirmative defenses, and enumerating damages.

II.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Viewing this case in the light most favorable to Kazi, the non-movant, and drawing all reasonable inferences in his favor, the Court concludes that genuine issues of material fact do not exist and grants NCAC's motion for summary judgment in regards to Kazi's liability under the Guaranties and denies further discovery relating to affirmative defense. *See Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

A.

The first question is whether these Guaranties are enforceable. NCAC's motion for summary judgment takes for granted that Kazi's liability under the Guaranties is already established. Yet this Court has only addressed his liability on a different set of guaranties—the guaranties Kazi signed with KFCC guaranteeing his entities' debts under the franchise

3

agreements. The Court now determines that the Guaranties pertinent to this opinion are also enforceable under Kentucky law.

> Kentucky's guaranty statute provides three ways for a guaranty to be enforceable:
>
> No guaranty of an indebtedness which either is not written on, or does not expressly refer to, the instrument or instruments being guaranteed shall be valid or enforceable unless it is in writing signed by the guarantor and contains provisions specifying the amount of maximum aggregate liability of the guarantor thereunder, and the date on which the guaranty terminates.

KRS § 371.065(1). If any one of the three prongs is met, the statute is satisfied and the guaranty is valid and enforceable. *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609 (Ky. 2004). Unlike the guaranties this Court addressed in the KFCC portion of this case, the Guaranties Kazi signed with NCAC were written on the Notes his entities executed. Therefore, the Guaranties are enforceable under Kentucky law. Moreover, Kazi admits that he signed the Guaranties. And the Kazi entities did not fulfill their obligations under the Notes, triggering Kazi's personal obligations under the Guaranties. He is liable under their terms.

### B.

Kazi does not dispute that the Guaranties exists, that they were written on the Notes, nor that he signed the Guaranties and that his entities began making payments under the Notes. Instead, he argues that certain affirmative defenses preclude his liability under the Guaranties. As the Court understands his arguments, he disputes his liability for the following reasons: (1) there was no contract between the parties; (2) even if there was a contract, there was no consideration for it; (3) even if there was a contract and consideration, NCAC breached that contract, thus frustrating the contract and negating his obligation to pay; and (4) that upholding his obligations under the Guaranties would somehow violate antitrust laws. The Court is

4

convinced that Kazi waived all of these affirmative defenses and, moreover, that they are without merit.

1.

The interpretation and construction of a contract is a question of law for courts to decide. *See, e.g., Dowell v. Safe Auto Ins. Co.*, 208 S.W.3d 872, 875 (Ky. 2006); *Equitania Ins. Co. v. Slone & Garrett, P.S.C.*, 191 S.W.3d 552, 556 (Ky. 2006). This Court interprets the language of the Guaranties to mean that Kazi has already waived any affirmative defenses. The Guaranties state that Kazi, the guarantor, "personally guarantee[s], *unconditionally, irrevocably and absolutely*, to [NCAC] . . . the due and punctual payment of all amounts payable under [the Notes] . . . ." *See, e.g.,* Complaint, KFC National Council and Advertising Cooperative, Inc. v. Kazi, No. 3-13-cv-291-S (W.D. Ky. Mar. 4, 2013), DN 1, Page ID # 14-17 (emphasis added). They further stipulate that "neither the death, *insolvency, bankruptcy, dissolution*, or disability of any one or more of [the Kazi entities] or Guarantor shall affect the obligation hereunder of Guarantor . . . ." *Id.* (emphasis added). He also waived "all suretyship and Guarantor's defenses generally." *Id.* Finally, Kazi waived "all defenses of [the Kazi entities] other than payment in full of all amounts owed under [the Notes]." *Id.* The entities, of course, did not pay their full obligations, and Kazi has not made payments under the Guaranties. The Court's interpretation is that these provisions amount to a knowing and voluntary waiver of defenses Kazi may have had against enforcement of his personal obligations.

2.

Regardless of Kazi's waiver, the Court is unconvinced of the merits of his affirmative defenses. First, Kazi argues that the Notes were not a binding contract because there was no meeting of the minds between the parties. His central rationale is that the two parties never

5

agreed on certain material terms, including the maturity dates on the Notes. He also doubts that NCAC properly assented to revisions he made to the maturity dates. So, he says, he should not be personally liable on the Guaranties since there was no underlying agreement. Notwithstanding Kazi's attempt to reconstruct and recast past events, the full history between the parties clearly shows a meeting of the minds and formation of a contract.[2] Besides, "[p]erformance, or even partial performance, of a contract will obviate the original lack of a meeting of the minds of the parties, where an assent may be deduced from the conduct of the party not bound." *Caskey v. Williams Bros.*, 11. S.W.2d 991, 993 (Ky. 1928). Kazi cannot dispute that his entities did make payments under the Notes. This partial performance further convinces the Court that there was a contract.

3.

Kazi also believes there was no consideration for the Notes. Yet NCAC made a legal forbearance—it had a right to be paid the contributions Kazi's entities had missed. It had the right to late payment interest charges. And it had a right to sue to recover these monies. It chose not to do so, instead agreeing to let Kazi's entities pay their obligations under the Notes. As long as the entities remained current on those Notes, NCAC could not act on the legal right to sue that it had before the Notes were executed. "Clearly, the forbearance of a right to sue is valid consideration to support a promise." *Alvey v. Union Inv., Inc.*, 697 S.W.2d 145, 148 (Ky. App. 1985) (quoting *Cooke v. Louisville Trust Co.*, 380 S.W.2d 255 (Ky. 1964)) . If NCAC's forbearance does not qualify as adequate consideration, the Court cannot imagine what would.

---

[2] Apparently, NCAC first sent out unsigned copies of the Notes and Guaranties to Kazi with a four month maturity date. Kazi and his entities signed these documents but marked out the maturity date, replaced it with a 24 month maturity date, then had Brian Burr, a Kazi representative, send them back to NCAC. The NCAC Executive Committee voted to approve the agreements so long as NCAC received the November 2010 advertising contributions that were due in December 2010. The Kazi entities *did* pay those November 2010 dues *and* initially made payments under the Notes.

6

The Court finds Kazi's argument that, even if there was a contract and consideration, there was an immediate breach and frustration of the contract, to be without merit. It appears that his sole rationale for this argument is that he understood the Notes would preclude the termination of his entities' franchise agreements, but Kazi Michigan had its franchise agreement terminated when his other entities were paying under the Notes. This is irrelevant. The Notes applied to Kazi Florida, Kazi New York, and Kazi Annapolis. Yes, if the Kazi entities had performed under the Notes, then the franchise agreements *for those entities* would not have been terminated. And, indeed, the franchise agreements were *not* terminated until they entered bankruptcy. The life cycle of Kazi Michigan has no bearing on the performance of these Notes, and NCAC did not breach or frustrate the contracts.

4.

Kazi's antitrust arguments are also unpersuasive. In both the KFCC and NCAC portions of this consolidated suit, Kazi has tried to convince the Court that KFCC and NCAC are engaged in some diabolical, collusive effort to dominate the market of bone-in, pressure-cooked chicken. Even though the Court has previously discarded these arguments, Kazi has not abandoned them. Beyond its conviction that these defenses were waived—as discussed above—the Court rejects these antitrust arguments for several reasons. Most notably, all of Kazi's asserted evidence—*his* lost profits, *his* lost business opportunities, *his* lost future profits— indicate harm to him, not to the market. But as "the Supreme Court has emphasized, the Sherman Act protects competition, not competitors." *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723, 739 (6th Cir. 2012) (citation omitted).

For all these reasons, the Court denies Kazi's request for further discovery on possible affirmative defenses.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is SUSTAINED as to Kazi's liability as described in this Memorandum Opinion.

IT IS FURTHER ORDERED that Defendant's request to assert affirmative defenses is DENIED and, therefore, his discovery requests are also DENIED. In a subsequent memorandum, the Court will consider the issue of damages.

IT IS FURTHER ORDERED that all other motions, besides damages motions, are moot.


cc: Counsel of Record